Brinkerhoee, J.
This is a petition in error filed in this court to- *491 reverse a judgment of the district court of Cuyahoga county, into which the original case was appealed from the common pleas of that ■county, and where the plaintiff in error was plaintiff, and the defendant in error was defendant.
The case was submitted to the court below on an agreed statement, showing substantially the following facts:
On the 31st day of March, 1851, the plaintiff, a municipal corporation, being authorized so to do by an act of the legislature of this state, entitled an act “authorizing Ohio City to subscribe to the capital stock of the Ohio Railroad Company, and for other purposes,” subscribed to the stock of the Junction Railroad Company one hundred thousand dollars, and at the date of its subscription paid the same to the railroad company in the plaintiff’s own bonds, which the railroad company received in full satisfaction of such subscription, at their nominal par valué, and issued to the plaintiff certificates in the usual form for the stock so subscribed and paid for.
On the 8th day of June, 1851, a little less than three months *after the making of such subscription, the directors of the [491 Junction Railroad Company, in pursuance of the authority conferred upon them by section 22 of the act entitled an act “ regulating railroad companies,” passed March 11, 1848, made the following order: “ Resolved, That the treasurer is directed to allow interest on installments as paid, payable in stock, and carry “to the account of each stockholder the interest annually, and when the amount is sufficient, to issue stock certificates in payment.” This resolution was not carried into execution by the treasurer of the company until after the plaintiff transferred, as hereinafter mentioned, to E. B. Litchfield and others, portions of its capital stock. The Junction company, to raise available means'for the building of their road, subsequently to receipt of plaintiff’s bonds (the precise time not appearing), having guaranteed the payment of the principal of the bonds, and the payment of the interest to accrue thereon semiannually, sold and transferred them to other parties.
On the 17th day of June, 1853, the plaintiff transferred, absolutely, to E. B. Litchfield, of the stock subscribed by it, eighty-nine thousand dollars, and between the 17th day of June, 1851, and the date of the consolidation agreement hereinafter mentioned, to Fisher, Denny & Go., five thousand dollars, and received in payment therefor, of the transferees, ninety-five of the aforesaid bonds- *492, 493 of one thousand dollars each, executed to the railroad company in payment of plaintiffs stock subscription,
On the-lSth day of July, 1853, the Junction Railroad Company, and the Toledo, Norwalk and Cleveland Railroad Company, agreed to consolidate, and bear the name .of the Cleveland and Toledo Railroad Company, and executed the agreement exhibited in the record, to take effect on the 1st day of September following. This con-492] solidation ^agreement was assented to by the stockholders, of the respective companies. By items four and five of this agreement, it is provided, in substance; among other things, that the debts, obligations, and liabilities of each of said companies shall be assumed and paid by the defendant, and that the interest account upon the stock payments of the Junction Railroad Company, shall be made up and closed on the 1st day of September, 1853, and the amount paid to the stockholders. Such payments to be made to the stockholders by the defendant in its own income coupon seven per cent, bonds, having not less than ten years to run, fractions payable in cash. Subsequently to the execution of this agreement, and during the month of August, 1853, plaintiff demanded of the treasurer of the Junction Railroad Company, interest upon ninctyr-five thousand dollars (the amount of the stock transferred to Litchfield and others), from June 8, 1851 (the date of the passage of the aforesaid resolution), to the time of the transfer of such stock.
On the 1st day of September, 1853, the said interest account having been made up to that date, the defendant paid the interest computed on the said sum of ninety-five thousand dollars, to Litchfield and other's, who then held and owned the ninety-five thousand dollars of stock, so transferred to them, and who claimed to be entitled to such interest in virtue of such transfer and ownership of the stock, and the interest on five thousand dollars, the-balance of the one hundred thousand dollars, to the plaintiff, in the mode provided in the fifth item of the consolidation agreement.
To recover so much of the interest thus paid to Litchfield, as accrued on the plaintiff’s stock, prior to its transfer to Litchfield, the plaintiff brought suit. The court below, on this agreed state of facts, gave judgment for the defendant; and this is assigned for error.-
*1. The first question to be determined is whether the defendant was legally bound to pay the interest claimed to anybody? *494 We think it was so bound. In the first place, the Junction company was, by express statute, authorized to pay it. Second, that company, by a resolution of its directory formally entered in its journal, directed it to be paid, and ordered its proper officer to •carry it to the account of the paying stockholder, and thereby •openly and unconditionally acknowledged its obligation to pay it. And third, this obligation was ratified and assumed by the contract of consolidation between the two companies, out of which issued the corporate existence of the defendant; and finally reaffirmed by the act of payment itself, though, as it is claimed, to a party not •entitled to receive it.
It is said, however, that all this is but evidence at most of a naked promise, without any consideration moving from the stockholder, and therefore not obligatory; Let us see:
The act authorizing the payment of interest, or stock dividends, prior to the completion of railroads, was passed at the instance of railroad companies, and for their benefit; and for its own benefit the Junction company availed itself of the privilege thus granted. The resolution directing these payments to be made was adopted in order to afford an inducement to early and prompt payment of stock subscriptions. Every subscriber to stock who paid up his subscription subsequent to the passage of the resolution referred to, would make that payment on the faith of that resolution, and under the influence of the inducement it presented; and it is clear that his payment would be a good consideration on which he might claim the fulfillment of the promise embodied in the resolution.
But how was it with respect to those who, like the plaintiff, paid up their subscriptions prior to the passage of the ^resolution? [494 If they were not to participate in the payment of interest or award of stock dividends, directed to be made by the resolution, then they were clearly injured by the paj^ments made to others. If the interest wore paid in cash, it was taken in part from funds they had contributed, and for a purpose not contemplated at the time of this subscription and payment of stock. If it were paid in stock, then, the relative value of their stock, which was the representative of a certain share of the entire value of the property and franchises of the corporation was, pro tanto, diminished. That payments of interest were made to those subscribers-who paid up subsequently to the passage of the resolution, is not denied; and we think the injury which would thus bo done to the plaintiff, and others simi *495 larly situated, is a sufficient consideration to give binding validity to the promise implied in the resolution. Even-handed justice could be administered in no other way than by the payment of interest on stock paid up to all holders of such stock alike, whether their payments of stock subscriptions were made before or after the passage of the resolution.
2. Was the defendant legally bound to pay the interest in controversy to the plaintiff? or was it all properly paid to Litchfield, to whom the stock was transferred by the plaintiff, after two years’ interest had, under the resolution, fully accrued?
The defendant contends that the interest, directed by the resolution to be paid, was but an incident to the capital stock; that the incident, in law, follows and accompanies the principal; and that the unconditional transfer of the stock to Litchfield carried with it and vested in him a right to receive all the interest, or stock dividends unpaid at the time of the transfer.
The legal principle'here asserted is not denied; but we think it 495] does not properly apply to the case before usv *The interest follows the principal as an incident to it, so long as it remains an incident; but when it is separated and set apart from the principal by actual payment, or by being carried, when due, to the credit of the owner of the principal in his account with the debtor, and this in pursuance of a provision in the contract creating and defining the principal debt, it is so separated and disjoined from the principal, as to cease to be an incident to, and does not follow it.
Let us recur now to the terms of the resolution.
“ Resolved, That the treasurer is directed to allow interest on installments as paid, payable in stock, and carry to the account of each stockholder the interest annually, and when the amount is sufficient, to issue stock certificates in payment.”
Now, by the terms of this resolution, by virtue of which alone the interest could be claimed by any one, and fundamental to the entire arrangement, this interest, “payable in stock,” was annually, at the end of each and every year, to be “ carried to the account ”— that is, we suppose, entered on book to the credit — “ of each stockholder ” for the time being entitled to receive it. It thus became separated and dissevered, at the end of each year, from tho stock on which it accrued, and was set apart as a fixed and vested right in the owner of the stock for the time being. Although the company’s road was yet-unfinished, and the was making no *496 yet, under the operation of this resolution, its stock was rendered analogous, if not equivalent, to a regular dividend-paying stock; and the interest annually .carried to the account of the stockholder, was, in all respects, like an annual dividend actually declared and placed to.his credit. And, in case of a sale of dividend-paying stocks, we supposed it to be a settled rule *that the purchaser [496 takes only the accruing dividend, unless it be otherwise specially stipulated.
And can the fact, that the vendor did not call for his interest thus aparted to him, prior to the transfer of his stock, alter the case ? We think not. By the terms of the resolution, on which alone his claim to interest, or that of any one else, could rest, it was expressly ordered to be entered to his credit at the end of each year, and with that he was entitled to rest content.
But, it is said, this interest was never, as a matter of fact, actually carried to the credit of the plaintiff. We can not admit the validity of this objection in the mouth of the defendant. It ought to have carried it to his credit. Good faith required it to be done, and the law forbids the defendant to derive any advantage from its own' negligence and wrong.
And no claim can be set up here against the plaintiff, on the ground of a want of notice as to his rights. The defendant was-bound to know the purport of its own obligations ; and Litchfield was also bound to know the terms of the resolution, under which, alone he could claim that the interest should be paid to him. And, moreover, it appears that he was the treasurer of the defendant, and, as such, made the payment to himself, or, in other words, retained, the money in his own hands under a claim of right.
We are of opinion, therefore, that the plaintiff is legally entitled to the interest accruing under the resolution referred to, for the-two years preceding the transfer of its stock ; that the district court did err in giving judgment for the defendant; and that the judgment ought to be reversed and the case remanded.

Judgment accordingly.

Bartley, C. J., and Swan, Bowen, and Scott, J. J., concurred..